[Civ. No. 25380.   Second Dist., Div. One.   Dec. 7, 1961.]

LILLIAN G. KRAMER, Plaintiff and Appellant, v. MAURICE KRAMER, Defendant and Respondent.

Emanuel Cowitt and Jack I. Esensten for Plaintiff and Appellant.

Oshman & Brownfield and Richard H. Oshman for Defendant and Respondent.

WOOD, P. J.—Appeal by plaintiff from order quashing writ of execution.

In October 1946, plaintiff (wife) and defendant (husband) made a property settlement agreement which provided, among other things, that the defendant would convey his interest in certain real property (house and lot where they resided) to plaintiff, and would pay $75 a month for the support of their two children; and that plaintiff would pay to defendant $7,500, payable in monthly installments of $75, and that such obligation would be evidenced by a note secured by a trust deed (presumably a second trust deed on the real property). The defendant executed the deed, and the plaintiff executed the note and trust deed.

In December 1946, plaintiff obtained an interlocutory judgment of divorce, wherein defendant was ordered to pay $75 a month for the support of the children. The final judgment was entered in December 1947.

In July 1947, after she had made payments which reduced the principal amount of the note to $7,200, he caused a reconveyance of the title to the property (described in the trust deed) to be made to her. A few days after she received the reconveyance she offered the property for sale. He commenced an action against her to prevent the sale—the action was in the nature of rescission of the reconveyance on the alleged basis that plaintiff had agreed not to sell the property.

In February 1948, he dismissed the action, and she gave him a new note and trust deed for $3,500.

About June 1948, she sold the property, and he caused another reconveyance of the title to the property to be made to her. He testified that he told her he would accept $1,750 for the $3,500 note and trust deed, and that the balance could

also be applied as prepayment for the support of the children; and she "agreed to it."

In July 1948, they remarried. She obtained an annulment of the marriage in March 1950.

On April 12, 1960, plaintiff filed an affidavit "for issuance of writ of execution" on the judgment against defendant for $75 a month for support of the children. It was alleged in the affidavit that defendant had not made any payment for the period of time from April 1, 1950, to September 1, 1955; that for the period from October 1, 1958, to November 1, 1959, defendant paid $45 a month instead of $75 a month; that the unpaid amount for the whole period from April 1, 1950, to April 12, 1960, was $5,370 as principal, and $2,554.90 as interest. A writ of execution for $7,926.90 was issued.

Defendant's motion to quash the writ of execution was made upon the ground that the judgment upon which the writ had been issued had been paid.

Defendant conceded that he had not paid, in cash, the payments specified in plaintiff's affidavit, but he contended that he gave the reconveyances as prepayment of the monthly payments for support of the children.

Defendant testified that such prepayment by the reconveyances was made because he was paying her $75 a month for the children and she was paying him $75 a month on the trust deed; that the house was large and she had an income of $125 a week from it; that in giving her the first reconveyance as a prepayment she promised that the home would be there for the children "to grow up in"; that he gave her the first reconveyance with the understanding that the property would not be sold and the children would have a nice home; it was his understanding that the difference between the $7,200 balance on the first trust deed and the $3,500 new trust deed was to be credited to the obligation for support of the children; it was also his understanding that the difference between the $3,500 new trust deed and the $1,750 (which he received when the house was sold) was also to be for prospective payments; he told plaintiff that he would take $1,750 or 50 per cent of the face value of the $3,500 note and that "the balance can also be applied as a prepayment for support of the children; that she "agreed to it"; when they had the conversation (about 13 years ago) regarding the reconveyance agreement "she told him the same thing" he told her; they agreed on the same thing; it "is silly that he should pay her $75 and

that she should pay him $75''; she said, ''Why don't you just give me the reconveyance and reconsider the prepayment, and you don't have to worry about a thing.''

Plaintiff testified that her name is now Mrs. Calagon; that inasmuch as defendant never gave her any money, he simply gave a reconveyance; he said he was sorry he had taken advantage of her by making her give a trust deed on the property, and that he would give a reconveyance because he realized he had made an error; she did not agree that the reconveyance would be prepayment of any support for the children; the $3,500 trust deed was given to him as a ''sort of settlement of $3,500 for the $7,200''—a settlement of the lawsuit with respect to the sale of the property; after she sold the house she agreed that she would settle for an amount less than the $3,500 trust deed—they ''finally settled again on the $3,500 to $1,750'' which was paid through escrow; when she sold the house she received a check for approximately $10,000 which check she gave to defendant so that he would go into business, they would remarry, and she could take care of the children without the additional work of renting rooms— the income from the house was $725 a month; he went into the jewelry business, and they remarried. On cross-examination, reference was made to her affidavit wherein she stated that for certain months he had paid $45 a month instead of $75 a month, and then she was asked if she knew that one of her daughters was working during those months; she replied in the affirmative; then she was asked if she had told her daughter not to tell defendant that she (daughter) was working, so that plaintiff could get support for both children; she replied in the affirmative. The judge asked plaintiff why she waited ''so long,'' from 1950 to 1960, to do anything about this; she replied that defendant had been incarcerated about five and a half years—from 1950 to 1955; the judge asked why she waited more than five years before doing anything about this; she replied that in the meantime he came to visit the children, and it seemed that he did not have any money, and he promised to pay when he was in business again.

Defendant testified on rebuttal that he did not receive the alleged check for $10,000; he did not receive $10,000; she did not give him any money from the sale of the house except $1,750.

[■■] Appellant contends that the order quashing the writ of execution was not supported by the evidence. She argues that the burden of proving payment was upon the defendant

and he had not carried that burden. Whether or not the reconveyances were made as prepayment of the required monthly payments was a question of fact for the trial judge. The judge stated, at the time of announcing his decision, that defendant's version as to what occurred is more plausible than what the plaintiff has said. The order is supported by substantial evidence.

Appellant also contends she was denied a fair trial. She argues that certain questions which the judge asked indicated that he had prejudged the matter. The questions so referred to were the ones wherein he asked why plaintiff had waited so long to do anything about this. There is no merit to this contention.

Appellant also asserts that the court erred in denying her request for a continuance to produce a rebuttal witness with respect to defendant's testimony that he did not receive $10,000. At the close of the trial, which apparently was near noon, counsel for appellant said that they had a witness on call who could rebut defendant's testimony that he did not receive $10,000; that if they might have 15 minutes they could produce the witness, who was in the downtown area; that the witness was Mr. Zall, a former husband of plaintiff, who had a conversation with defendant when defendant allegedly admitted that he received "the money." The judge made a statement to the effect that he should not wait during the noon hour for the witness to arrive. The witness had not been subpoenaed. The request for a continuance was a matter within the discretion of the trial court. It does not appear that the court abused its discretion.

The order is affirmed.

Fourt, J., and Lillie, J., concurred.